## Receivers of Kirby Lumber Company v. W. J. Owens.

### Decided June 9, 1909.

**1.—Negligence—Personal Injuries or Death—Common Law.**

Under the common law no cause of action arose in favor of any one for damages arising from the death of a person. The present right of action is based solely upon statute.

**2.—Same—Liability of Receivers—Statute Construed.**

Under the provisions of article 3017, Rev. Stats. the proprietor, owner, charterer or hirer of any railroad, or the receiver or other person in charge or control of any railroad is liable for the death of a person caused by the negligence of a servant or agent, whether such railroad is used as a common carrier or merely as an incident to the principal business.

**3.—Same.**

The receivers of a lumber company engaged in operating a locomotive and trains of freight cars upon a spur track between the line of another railroad

and the mills of the company, are liable for the death of a person caused by the negligence of an employee of said receivers in operating said trains of cars.

**4.—Cases Followed and Distinguished.**

Lodwick Lumber Co. v. Taylor, 100 Texas, 270; s. c. 39 Texas Civ. App., 302; Cunningham v. Neal, 101 Texas, 338; Bammel v. Kirby, 19 Texas Civ. App., 198, followed. Halbert v. Texas Tie and Lumber Co., 107 S. W., 592; Ott v. Johnson, 101 S. W., 534; Turner v. Cross, 83 Texas, 218; Parker v. Dupree, 28 Texas Civ. App., 341; Fleming v. Texas Loan Agency, 87 Texas, 238, and M. K. & T. Ry. of Texas v. Freeman, 97 Texas, 394, distinguished.

Appeal from the District Court of Jasper County. Tried below before Hon. W. B. Powell.

*Andrews, Ball & Streetman* and *Baker, Botts, Parker & Garwood,* for appellant.—The court erred in overruling the general demurrer of the defendants, J. S. Rice and Cecil A. Lyon, receivers, for that the plaintiff's petition, filed herein, failed to show that said defendants were liable to plaintiff in any sum, because the receivers of a private corporation, such as these defendants are, are not liable for damages resulting in death of an employe, under the statutes of the State of Texas. General Laws, Feb. 7, 1890; General Laws, 20th Legislature, March 25, 1887; article 3017, Revised Statutes; Turner v. Cross, 83 Texas, 218; Parker v. Dupree, 28 Texas Civ. App., 341; Ott v. Johnson, 101 S. W., 534; Missouri, K. & T. Ry. v. Freeman, 9 Texas Court Reporter, 409; Halbert v. Texas Tie & Preserving Co., 20 Texas Ct. Rep., 999; Asher v. Cabell, 50 Fed., 818; Fleming v. Texas Loan Agency, 87 Texas, 238; Wade v. Lutcher & Moore Lumber Co., 74 Federal, 519; Hendrix v. Walton, 6 S. W., 749; N. W. Insurance Company v. Gridley, 11th Def. Cases, Case No. 5808; also found in 14th Blatchford, 107; 100th U. S., 614.

*F. J. & R. C. Duff* and *A. L. Davis,* for appellee.—Under the facts in this case the receivers of the Kirby Lumber Company are liable under our statute for injuries resulting in death. Revised Statutes of Texas, art. 3017; Cunningham v. Neal, 107 S. W., 539, 15 L. R. A. N. S., 479, and notes; Lodwick Lumber Co. v. Taylor, 100 Texas, 270; Bammell v. Kirby, 19 Texas Civ. App., 198; Keystone Mills Co. v. Chambers, 118 S. W., 178.

FLY, ASSOCIATE JUSTICE.—Appellee, for himself and his wife, M. E. Owens, instituted this suit to recover damages of appellants, alleged to have accrued on account of the death of L. B. Owens, their seventeen year old son, who was killed in a car while in the employment of appellants. A trial by jury resulted in a verdict and judgment for appellee in the sum of $1,000, $500 being apportioned to each of the parents.

Under the common law no cause of action arose in favor of anyone for damages arising from the death of a person, and the statute creating the liability is the only warrant for instituting such actions and its provisions alone can be consulted in arriving at a conclusion in fixing such liability. The first statute authorizing suits for damages resulting from the negligent infliction of injuries resulting

in death was passed in 1860, and that Act was amended in 1887 and 1892. In the original Act, which was carried into the Revised Statutes of 1879 as article 2899, the portion fixing the liability of railroads, steamboats, stage coaches or other vehicle for the conveyance of goods or passengers for their own negligence and that of their servants or agents, was in the precise language of the present statute with the exception that the negligence or carelessness of the servants or agents was qualified by the word "gross." The second clause of article 3017 is the same that it was in the original statute, but by the amendment of 1887 the word "gross" was stricken out and in 1892 the latter part of section 1, fixing the liability of receivers or other persons in charge or control of any railroad, was added by the Legislature. The present statute is as follows:

"Article 3017: Actions for injuries resulting in death, brought when:

"An action for actual damages on account of injuries causing the death of any person may be brought in the following cases:

"1. When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer (or) hirer of any railroad, steamboat, stage coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, negligence or carelessness of their servants or agents; when the death of any person is caused by the negligence or carelessness of the receiver or receivers or other person or persons in charge or control of any railroad, their servants or agents, and the liability of receivers shall extend to cases in which the death may be caused by reason of the bad or unsafe condition of the railroad or machinery, or other reason or cause by which an action may be brought for damages on account of injuries, the same as if said railroad was being operated by the railroad company.

"2. When the death of any person is caused by the wrongful act, negligence, unskillfulness or default of another."

It will be noted that it is not the receivers of railroad companies who are made liable under the amendment of 1892, but it is the "receiver or receivers, or other person or persons, in charge or control of any railroad, their servants or agents" who are rendered liable. The word "railroad," as used in the amendment in connection with receivers and other persons, must have the same meaning and import that it has in the first part of the section, and unless there are qualifying or descriptive words in that portion of the section which restrict the meaning of the word it must include railroads of every description. This brings us to the consideration of the language used in the first part of the statute which names those to be affected, and the only question involved in this case is this: Is the proprietor, owner, charterer or hirer of any railroad, or the receiver or other person in charge or control of any railroad, liable for the death of a person caused by the negligence of a servant or agent, when such railroad is not used as a common carrier, but merely as an incident to the principal business?

The facts in this case are that the Kirby Lumber Company was chartered by the State of Texas to establish and maintain a lumber

company, "to acquire, hold and own lands by lease or purchase for the purpose of acquiring the supply of lumber, timber and logs necessary to the conduct of said business; to purchase, lease, erect and operate all necessary saw mills, planing mills, dry kilns, tram roads and all necessary incidents to such business; to manufacture and sell lumber, timber and logs, together with the purchase and sale of such goods, wares and merchandise used for such business." In pursuance of that authority the corporation went into the lumber business, and in the prosecution of that business constructed a road consisting of a roadbed with steel rails laid upon wooden ties, of standard gauge, just as railroads are usually constructed, the same being twelve miles in length and running from Kirbyville, on the line of the Gulf, Colorado & Santa Fe Railway Company, to the works of the lumber company in the pine forest. Over this line of road trains consisting of locomotives propelled by steam, and cars for the carriage of logs, and the employes and their food supplies, were operated originally by the lumber company and then by Cecil A. Lyons and J. S. Rice, as receivers of the company. It was the custom of the Gulf, Colorado & Santa Fe Railway Company to furnish the receivers with the requisite number of cars for the prosecution of the lumber business and they would attach their locomotives to the cars and convey them out to the woods, where they were loaded with ties manufactured by the receivers and then carried back to Kirbyville and there delivered to the railroad company named pursuant to a contract with that company. The tie train while on the track of the lumber company was operated by the employes of the receivers. In addition to the tie train a log train was operated by the receivers to transport logs from the woods to the mills in Kirbyville. At times persons living in the vicinity of the road would ride, free of charge, to and from Kirbyville on a train consisting of a locomotive and three cars, as would persons seeking employment in the woods. The locomotives, the property of the lumber company, used on the lumber road, were of the type used by other railroads and they would at times leave Kirbyville and run on the track of the Gulf, Colorado & Santa Fe Railway Company to other points on its line where the lumber company had mills. L. B. Owens, an employe of appellants, while on his way to the woods, to engage in the labor for which he was employed, in one of the lumber company's cars, was killed through the negligence of one Wyric, an employe of appellants, and the foreman of the gang, of which L. B. Owens was a member. Deceased was a boy of seventeen years of age, who lived with his parents, and they were damaged by his death in at least the sum found by the jury.

The facts clearly establish that the line of railway operated by appellants was in nowise different in its construction and equipments from the railroads in use throughout the country and that it was used as other railroads for the conveyance of freight, if not of passengers, just as they are. Its locomotives and cars were similar to those ordinarily used on railroads, and at times were operated on its only connecting line. It can be differentiated from other railroads only in that it was used not in conveying the freight of others for hire,

but its own freight and employes in the prosecution of the business of the lumber company to which it belonged, and the receivers in control of it must be liable for the negligence of their agents or servants operating the road, unless the fact that it is not a common carrier absolves them from liability.

Railroads operated in a similar manner have been held to be included in the fellow servant's law, in Cunningham v. Neal, 101 Texas, 338. In that case, Cunningham & Co., a private corporation, owned and operated sugar mills and refineries, a paper mill and a farm, and had on its grounds, consisting of eight or ten acres of land occupied by the mills and refineries, numerous tracks and side-tracks of standard gauge railroad which were owned by the corporation. An engine was rented by the company and was used in moving the cars to the sidings of nearby railroads. Neal was one of the crew that operated the engine and cars and was in the employment of Cunningham & Co. The Court of Civil Appeals of the First Supreme Judicial District, being unwilling to follow the decision of the Third District in Lodwick Lumber Co. v. Taylor, 39 Texas Civ. App., 302 (erroneously in their question credited to this court), certified the matter to the Supreme Court. In an opinion, fully sustaining the opinion in the case named, the Supreme Court said: "The facts show that there was no difference in the character of this road, nor in the manner of construction, equipment, or operation, from that of the connecting roads, except the extent of the business done upon it, and that it was operated by a private corporation. The statute does not prescribe that the corporation which operates the railroad shall be organized for that purpose. Neither does it require that the operation shall be for the purpose of carrying freight and passengers for the public in order to subject the operator to the liabilities prescribed by the statute." The Supreme Court, as stated, cited and approved the Lumber Co. v. Taylor case, and in that case it was held that "railroad" is used in article 4560f in the same sense that it is used in article 3017.

In the case of Bammel v. Kirby, 19 Texas Civ. App., 198, which is cited with approval in the Cunningham-Neal case by the Supreme Court, it was held that street railways are included in and comprehended by the word "railroad," used in article 3017, and the court repudiated the suggestion that they should be so included under the description "other vehicle for the conveyance of goods or passengers." The court said: "We believe that it has not been questioned in this State that street railroads themselves, when operating their roads, are liable under this statute for damages for deaths caused by the negligence of their servants. If they are generally liable, their liability is created by the inclusion of them within the words 'any railroad' used in the first clause of subdivision 1. If that language embraces street railroads, it must necessarily follow that the same language in the second clause, with reference to the receiver of 'any railroad,' must also include receivers of such railways, because it is impossible to hold that the words are used in different senses in the two relations. It might be urged that liability would attach to such a company as the owner of 'vehicles for the conveyance of goods

or passengers,' but it is hardly to be supposed that the Legislature, if intending to make them liable at all, would express its intention by referring to them as the owners of vehicles, while at the same time declaring generally the liability of railroads. The words 'other vehicles' follow naturally after 'stage coach,' and include such instruments as are not embraced in the preceding language. They might include street cars, but we think the more natural construction of the statute is to hold that those operating street railways are included among the owners of 'any railroad.'"

The foregoing quotation is made to show that the court rendering the decision construed the statute so as to make the words "for the conveyance of goods or passengers" descriptive of "other vehicle." This we think the true construction of the statute, and it would seem improbable that a Legislature of the State would think it necessary to qualify the words "railroad, steamboat or stage coach" by the words "for the conveyance of goods or passengers." The words "railroad, steamboat or stage coach" are inseparably associated with the conveyance of goods and passengers and it would have been entirely unnecessary to use the descriptive words in connection with them. Each of them is universally used for the purposes named and they are to a greater or less extent dangerous agencies, against which not only the general public, but the numerous servants and employes engaged by them are sought to be protected.

It was totally unnecessary to use qualifying words when the words "railroad, steamboat, stage coach" were used, because the very names of them are fully descriptive of their uses, but when the words "other vehicle" were used an uncertainty would arise as to the kind of vehicle that was intended, so as to not include vehicles used for private purposes, such as carriages, buggies and automobiles owned and used by individuals for the conveyance of their families or friends from place to place. The latter kind of vehicles were not to be classed with railroads, steamboats and stage coaches, and therefore the descriptive words "for the conveyance of goods or passengers" were used to place the "other vehicles" in the same class with the vehicles first mentioned. Those words require that the "other vehicles" shall perform the service that is always performed by railroads, steamboats and stage coaches, to wit, the carriage of goods and passengers. The Legislature did not wish to render every owner, proprietor, charterer or hirer of every vehicle liable for the negligence of its servants or agents and thus place them in the same category with railroads, and therefore the qualifying words were used. This is the logical conclusion arising from the decision in the Bammel v. Kirby case, and we think the only logical construction to be placed on the language used in article 3017.

As before stated herein, the Supreme Court has held that a short line of railway used by a corporation, not as its principal business, but as a mere incident thereto, was a railroad under the fellow servants' Act, and the Court of Civil Appeals of the First District, in pursuance thereof, affirmed a judgment for damages arising from personal injuries in the operation of such railroad (Cunningham v. Neal, 49 Texas Civ. App., 613), and yet the same court held in

Halbert v. Texas Tie & Lumber Co., 107 S. W., 592, that a lumber corporation was not liable for the death of an employe, through the negligence of another employe, while engaged in the operation of a railroad as an incident to the lumber business. Under the application of the two decisions a lumber company while operating a railroad is liable for personal injuries inflicted on an employe through the carelessness or negligence of an agent or servant, but is not liable if the employe should die. We do not believe that the court would adhere to such an apparent inconsistency, and believe that it arose from the fact that the ruling in the death case was made prior to the decision of the Supreme Court in Cunningham v. Neal. It is evident from the opinion of the Court of Civil Appeals in the Halbert case that the decision was not influenced by the qualifying words "for the conveyance of goods or passengers," but it was rested on the broad proposition that a railroad used for the sole purpose of furthering another business was not a railroad within the meaning and scope of article 3017. This, we think, is apparent from the fact that in the Cunningham v. Neal case it was held that "railroad," as used, without any qualifying words in article 4560f, did not include a tramway used by a lumber company. When the Supreme Court held that "railroad" meant roads used by a company in other than the railroad business, it logically resulted that the opinion in Halbert v. Texas Tie & Lumber Co. was overruled. None of the cases cited by appellants tends to support their position except the last named case and another by the same court, Ott v. Johnson, 101 S. W., 534. This, we think, will be seen by a review of some of the authorities cited by appellants.

The case of Turner v. Cross, 83 Texas, 218, was decided before that part of article 3017 was enacted which renders the receivers of railroads liable in death cases for the negligence of servants; indeed, it was in direct response to that opinion that the amendment of 1892 was enacted. The sum and substance of the opinion in that case was that a receiver of a railroad company could not be held liable as the proprietor, owner, charterer or hirer, but must be specially named in the statute, and it has no bearing whatever upon the matter at issue in this case.

In the case of Parker v. Dupree, 28 Texas Civ. App., 341, it was held that article 3017 did not authorize a suit against the receiver of a corporation other than one in control of a railroad, which has no bearing upon this cause. The same can be said of Fleming v. Texas Loan Agency, 87 Texas, 238.

In the case of Missouri, K. & T. Ry. of Texas v. Freeman, 97 Texas, 394, the decision was made by a divided court, the only legitimate subject being as to whether a railroad company was liable for the death of a man by smallpox in a hospital maintained by it, through the negligence of those employed by the railroad company to conduct the hospital. The majority of the court held that no action could be maintained against the railway company under article 3017, there being no negligence on the part of the corporation itself, and that of the servant being in a business not connected with its office as a carrier. There is not one word or syllable uttered by the

Supreme Court in that opinion that militates against the opinion of this court or that sustains the position of appellants.

We conclude that appellants were in charge and control of a railroad within the meaning of article 3017, and the judgment will, therefore, be affirmed.

*Affirmed.*

Writ of error refused.