MATRUSCIELLO v. MILLIKEN BROS., Inc.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

1. MASTER AND SERVANT (§ 280*)—ACTION FOR INJURIES—ASSUMPTION OF RISK.

Evidence in an action for injury to a servant *held* sufficient to show that plaintiff assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 981–986; Dec. Dig. § 280.*]

2. MASTER AND SERVANT (§ 288*)—INJURIES—ASSUMPTION OF RISK—QUESTION FOR JURY.

Under the common law the question of assumption of risk is not necessarily one for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

3. MASTER AND SERVANT (§ 250*)—INJURIES TO SERVANT—EMPLOYER'S LIABILITY ACT—NATURE OF REMEDY.

In an action by a servant against a master for injuries from the alleged failure of the master to promulgate rules for the government of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

its employés, plaintiff cannot gain any aid from the employer's liability act (Consol. Laws, c. 31, §§ 200–204), as that statute has no application to common-law actions.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 805; Dec. Dig. § 250.*]

4. MASTER AND SERVANT (§§ 101, 102*)—SAFE PLACE FOR WORK—DUTY OF MASTER—RULES.

The duty of a master to promulgate rules and provide a safe place for his servant to work is not applicable to the sending of the servant, whose regular employment was in a safe place, across a railroad track on an errand, the performance of which did not require him to pay attention to anything except his own safety.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 179; Dec. Dig. §§ 101, 102.*]

5. MASTER AND SERVANT (§ 180*)—FELLOW SERVANTS—"VICE PRINCIPAL."

An engineer in charge of an engine used in the yards of a factory is not a vice principal within the scope of Railroad Law (Consol. Laws, c. 49) § 42a, making engineers in the employ of a railroad corporation vice principals of such corporation or the receiver of such corporation, as the company in charge of the factory was not a railroad corporation or a receiver thereof.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 360; Dec. Dig. § 180.*

For other definitions, see Words and Phrases, vol. 8, pp. 7313–7316; vol. 8, p. 7827.]

Rich, J., dissenting.

Appeal from Trial Term, Richmond County.

Action by Lorenzo Matrusciello against Milliken Bros. Plaintiff's complaint was dismissed, and he appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and JENKS, BURR, RICH, and CARR, JJ.

Thomas J. O'Neill (L. F. Fish, on the brief), for appellant.
E. Clyde Sherwood, for respondent.

JENKS, J. The servant was dismissed at the close of his case against his master, on the ground that he had not made out a case under the employer's liability act or under the common law. The learned trial court also held that the notice served under the said act was insufficient, although we had by a divided court held otherwise (129 App. Div. 661, 114 N. Y. Supp. 223). The court thought that the dissentients expressed the law correctly, in view of the decision in Finnigan v. N. Y. Contracting Co., 194 N. Y. 244, 87 N. E. 424, 21 L. R. A. (N. S.) 233, which was published after our judgment. But, in view of the latest decision of the Court of Appeals in Logerto v. Central Building Co., 198 N. Y. 390, 91 N. E. 782, I think that our decision was right and for the reasons expressed in the opinion of Miller, J.

The plaintiff had worked for the defendants for 14 months, and in the nighttime for 5 or 6 months of that period in the yard of an iron plant. About 10:30 p. m. of April 22, 1907, he was seeking for a shovel, and was told by his foreman to fetch one from the limestone pit. There were railroad tracks between the place where the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff was at work and the limestone pit. The tracks were used by the defendants for carriage of iron from a crane to their factory. The version of the plaintiff is that as he started he saw cars standing still on the track, which he crossed by passing around an end of a car; that he found the shovel and that as he returned he saw again the cars; that he looked to see if there was a locomotive attached to them but saw none; and that, as he attempted to recross the tracks around an end of the cars, the cars were moved so that he was struck and thrown to the ground. The contention of the learned counsel for the appellant is that the case should have been submitted to the jury because they would have been justified in finding negligence in the omission to make a rule requiring that trains should not be started until after the ringing of a bell to give warning to the employés working at night in or about the tracks, or that, if they did make such a rule, they permitted it to fall into disuse. The plaintiff called the engineer of the locomotive, and elicited from him that, although no rules were given to him, he worked the cars in exactly the same way as on every railroad so far as signals were concerned, and that the standard rules required the starting of engines after a signal was given by the brakeman and the bell was rung. I may add that, on cross-examination, the witness testified that the bell was rung and the whistle blown on this occasion after a signal from his brakeman, although I shall not consider this testimony on the question of the correctness of the dismissal of the complaint. The plaintiff testified that as he was "passing—I wasn't only a distance of about so much, about three feet—Q. (Interrupting). About three feet they started up, did they? A. Yes; just as soon as I was passing it struck me right off. I was right on the track" when they started up, etc. Thereafter this question was asked:

"Q. And when they started up in this way, when you were only about two or three feet in front of them, was any signal of any kind given? * * * A. No signal. Q. No bell rung or whistle blown? A. After they brought me on the locomotive, then it began to ring, the bell."

Testimony that no signal was given when the plaintiff was within two or three feet is not testimony that no signal was given at all. But, in any event, so far as the common-law right of action is concerned, I think that, even if no signal was given, the testimony establishes that the plaintiff assumed the risk of the situation. He testifies that he had worked about this place for 14 months and for a considerable period in the nighttime; that in the nighttime he saw the trains going and coming; that they started without any signal of any kind; and that he had observed this twice a week for six months. He also testifies that he saw the cars on the track when he passed over the rails, and that he saw them again when he set out to return. In Caron v. Boston & Albany Railroad Co., 164 Mass. 523, 42 N. E. 112, the court say:

"There is nothing to show that it had not been customary to switch cars on to tracks already occupied without warnings or signals save such as would naturally be given to one another by those engaged in the work during the whole time that the plaintiff's intestate had been working in the yard,

which, as his widow testified, was two years and four months. It does not appear that any change had been made in the mode of doing the business so as to make it more dangerous after he entered the defendant's service. The law is well settled that, under such circumstances, the servant assumes the risk of such dangers as ordinarily are connected with the service in which he is engaged. He enters the business as it is, and cannot be heard to complain that it might have been made safer, or that it was conducted in a hazardous manner. Goodes v. Boston & Albany Railroad, 162 Mass. 287 [38 N. E. 500], and cases cited. O'Maley v. South Boston Gaslight Co., 158 Mass. 135 [32 N. E. 1119, 47 L. R. A. 161]."

The circumstances are stronger in the case at bar, inasmuch as the plaintiff testifies affirmatively that no signals were employed. In the common-law aspect of the case, the question of assumption of risk is not necessarily one for the jury. Bushtis v. Catskill Cement Co., 128 App. Div. 780, 113 N. Y. Supp. 294, and authorities cited. So far as liability under the employer's liability act is concerned, the alleged failure to promulgate rules is not within its scope. Davenport v. Oceanic Amusement Co., 132 App. Div. 368, 116 N. Y. Supp. 609; Dresser's Employer's Liability, p. 318. And neither the action of Brown, the foreman, nor that of the engineer, fastens liability upon the defendants. The case does not present the question of providing a safe place to work. For aught that appears, the plaintiff, at work in a perfectly safe place, was told where he could go to find a shovel, and crossed the tracks only for that purpose. Certainly Brown, who appears as a foreman, had no higher duty to perform for the master than had the master himself. In Di Napoli v. N. Y., N. H. & H. R. R. Co., 136 App. Div. 334, 120 N. Y. Supp. 905, we have recently held that when a workman was sent on an errand across a railroad track, near which he was at work, to get a tool, there was no duty cast upon the master to have some one to watch and warn the plaintiff against oncoming trains; the court, per Burr, J., saying:

"To hold that, because a workman whose place of work was perfectly safe was occasionally sent on an errand across a railroad track under circumstances which did not require him to pay attention to anything except his own safety while crossing such track, it was necessary to have some one to watch and warn him of approaching trains, would be an unreasonable burden upon the master. One might just as well contend that if a gang of men were engaged in work upon one side of a street or avenue, and it became necessary to send one of them on an errand across such street, the master should detail some one to keep watch and take care of him while he passed from one side of the thoroughfare to the other."

Moreover, there is no evidence that Brown was a superintendent within the purview of the employer's liability act. For aught that appears, he was but a fellow servant. See Abrahamson v. General Supply & Construction Co., 112 App. Div. 318, 321, 98 N. Y. Supp. 596 et seq. The engineer was not a vice principal within the scope of section 42a, Railroad Law (Consol. Laws, c. 49), as the defendants were not a railroad corporation or the receivers thereof. He was not a superintendent. In McHugh v. Manhattan Ry. Co., 179 N. Y. at 384, 72 N. E. 314, where the train was backed down upon a workman, the court, per Cullen, Ch. J., say:

"Doubtless had the train been started by the engineer without a signal, or had the conductor or one of the guards improperly given a signal for the

train to move, it would have been the act of a fellow servant, and the defendant would not have been liable therefor."

The judgment is affirmed, with costs.

HIRSCHBERG, P. J., and BURR and CARR, JJ., concur. RICH, J., dissents.