𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

KARABALIS, ADMINISTRATOR OF NICK KARABALIS, DE-
CEASED V. E. I. DUPONT DE NEMOURS AND COMPANY.

January 20, 1921.

Absent, Prentis, J.

1.  MASTER AND SERVANT.—*Virginia Employers' Liability Act—Fel-
    low Servants—Railroads—Manufacturing Corporation Operat-
    ing a Private Railroad.*—The Virginia employers' liability
    act, as contained in Acts 1912, p. 583, Code of 1919, secs.
    5791-5796, does not apply to the class of employees therein
    specified of a manufacturing corporation operating in the State
    a private railroad, merely incidental to and in connection with
    its manufacturing plant and manufacturing business. The act
    only applies to employees of corporations operating in this
    State railroads used or authorized by law to be used as com-
    mon carriers engaged in intrastate commerce.

2.  MASTER AND SERVANT.—*Virginia Employers' Liability Act—Fel-
    low Servants—Railroads—Manufacturing Corporation Operat-
    ing a Private Railroad.*—It is within the constitutional author-
    ity of the legislature in enactments such as the Virginia em-
    ployers' liability act, which are in the exercise of the police
    power of the State, to adopt a classification which would em-
    brace every corporation operating every kind of road or way
    on which rails of iron are laid for the wheels of cars to run
    on, without regard to the character of the railroad as fixed
    by the business in which it is engaged, e. g., whether the cor-
    poration is engaged in the business of a common carrier or of
    manufacturing.

3.  MASTER AND SERVANT.—*Virginia Employers' Liability Act—Fel-
    low Servants—Railroads—Manufacturing Corporation Operat-
    ing a Private Railroad—Equal Protection Clause of the Four-
    teenth Amendment.*—A classification in a State employers'
    liability act of objects, based on a distinction between em-
    ployers engaged in a particular business within the State (cer-
    tainly where the business is that of operating a railroad, even

where the railroad is not used in the business of a common carrier)—as, for example, between employees of corporations engaged in such business and employees of partnerships or private persons engaged in the same or a similar business, is within the legitimate exercise of legislative discretion in classification of the objects of such legislation, and is valid in the purview of the equal protection clause of the fourteenth amendment.

4. VIRGINIA EMPLOYERS' LIABILITY ACT.—*Construction of the Statute—Meaning of Specific Words.*—Whatever may be the specific words used in employers' liability acts, or in kindred legislation to classify the objects of the statute, the legislative meaning of the words must be found by considering them in the light of other legislation in the particular State on the same subject, and of the meaning which is given to the same words in other existing general legislation of such State.

5. VIRGINIA EMPLOYERS' LIABILITY ACT.—*Abolition of Fellow Servant Rule.—"Railroads" Confined to Common Carriers.*—The words "every corporation operating a railroad in this State," as used in the Virginia employers' liability act (Acts 1912, p. 583, Code of 1919, secs. 5791-5796), only embrace common carriers, either acting as such, or empowered by law to so act, in the operation of railroads in the State. That is to say, the classification of the Virginia statute of employees to whom its provisions are applicable embraces only railroad common carrier servants, and does not embrace the employees of a private manufacturing corporation.

6. MASTER AND SERVANT.—*Fellow Servants.—Assumption of Risk.—Different Departments.*—In an action by a servant against his master, counts in the declaration alleging an injury due to changing conditions at the place of work of the servant occurring in the progress of the work of other servants of the master in a different department of the service from that of the injured servant, where the circumstances alleged in the declaration are not such that any negligent act or omission of the master appears to have existed in the matter of foreseeing and guarding against the natural and probable result of reasonably to be expected acts of the fellow servants in carrying out the operations of the master, did not state a cause of action, as the injured servant must be held to have assumed the risk of injury due to the negligence of his fellow servants which caused the injury.

7. FELLOW SERVANTS.—*Different Departments of Service.—General Rule.*—The mere fact that a servant is employed in a different department of service than that of the fellow servant whose

negligence contributed to his injury does not render inapplicable the common-law doctrine of the assumption of risk of the result of the negligence of fellow servants. The test is, were the departments so far separated from each other as to exclude the probability of contact and of danger from the negligent performance of their duties by employees of the different departments. If they were so separated, then the servant is not to be deemed to have contracted with reference to the negligent performance of the duties of his fellow servant in such other department.

8. FELLOW SERVANTS.—*Different Departments of Service—Breach of Non-assignable Duty to Provide Safe Place of Work.*—Where, however, the departments are so separated that, from the standpoint of the servant, the probability of contact and of danger from the negligent performance of their duties by the employees of the different departments is excluded, if the master performs his non-assignable duty of exercising reasonable care to provide a reasonably safe place of work for the servant, and the circumstances are such that the servant assumes, and may reasonably assume, that the master has performed or will perform such duty (which would be the situation "naturally" or normally), so that the servant is not to be taken to have assumed the risk of the negligence of his co-employees, the master is liable in case of his breach of his non-assignable duty just mentioned, although the injury of the servant is due to changing conditions at the place and occurring in the progress of the work.

9. MASTER AND SERVANT.—*Changing Conditions of Work—Duty of Master to Warn Servant.*—The duty of a master to warn his servant of danger arising from changing conditions at the servant's place of work is incident to, and grows out of, the duty of the master with respect to providing a reasonably safe place of work, and does not extend to warning a servant against possible negligence of his fellow servants.

10. MASTER AND SERVANT.—*Hospitals.*—In an action by the administrator of a servant against the master for the death of the servant, a count in the declaration alleged that plaintiff's intestate was removed by defendant to a hospital owned and operated by it for the benefit of its sick and injured employees, where defendant undertook to cure him, but that defendant knowing that he was not in a condition to leave the hospital, negligently dismissed and forcibly ejected him from the hospital, thereby causing his death.

*Held:* That the count stated a cause of action.

20

Error to a judgment of the Circuit Court of Prince George county in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed and remanded.*

The case is before us upon the amended declaration filed therein on March 17, 1917; the action of the court below in striking therefrom and from each count thereof, on motion of the defendant, as being "immaterial" and tending to "confuse the issues," so much thereof as alleges that the defendant was "the owner and operator of a certain system of railroads, and as such was a corporation operating a railroad in this State"; and in sustaining the demurrer of the defendant to the declaration as it stood with the allegations just mentioned stricken therefrom.

The parties will be hereinafter referred to in accordance with their positions as plaintiff and defendant in the court below, and the plaintiff's intestate will be referred to as the deceased.

The first and third counts of the declaration are practically the same and allege that before and at the time the cause of action arose the defendant was a foreign corporation and "the owner and operator of a large manufacturing plant" and also "the owner and operator of a certain system of railroads, and, as such was a corporation operating a railroad in this State." In the petition for the writ of error, which was awarded in the case, the plaintiff makes the following allegation on this subject, namely: "It is alleged in the declaration that the defendant is a foreign corporation 'operating a system of railroads' in connection with its plant."

These counts further allege, in substance, that at the time the cause of action arose the defendant was engaged in the

construction and building of certain buildings and tanks. to be used in its manufacturing business; that a certain tank was in the course of erection which was supported by upright pillars, some thirty feet above the ground or floor;. that certain employees of the defendant, under the supervision of a foreman, were at work upon this tank and appur-- tenances and were handling a large number of short sections of pipe, implements, tools and machinery; and that they were engaged in a different department of labor from the deceased. That the deceased was employed and en--- gaged as a common laborer in the work of tamping or pack-- ing dirt around the foundation of an upright pillar or post. "very near the pillars or posts upon which the next above mentioned tank and appurtenances rested as aforesaid";. that the deceased "was working under the direction and orders of a foreman, an agent or officer of the defendant,. superior to (the deceased) and having the right to control and direct his service; that in the performance of his duties. as aforesaid and at the direction of said foreman, it became and was necessary for (the deceased) to work with his back towards the place at which the men engaged at work on said tank were working, the work of (the deceased) requiring his undivided attention.

"That thereupon it became and was the duty of the said defendant to so provide that, while obeying the orders of the said foreman and engaged in his work aforesaid, (the deceased) should not be struck or injured by the falling of any of the tools, implements or sections of pipe, through the negligence of the agents and servants of the said defendant at work upon the platforms surrounding said tank and engaged in another department of labor from (the deceased).

"Yet the said defendant," in disregard of its duties in that behalf, while the deceased was at work as aforesaid.

in his aforesaid place of work, permitted its operations to so proceed that its employees, engaged at work on said tank as aforesaid, knowing actually or constructively of the position of the deceased, "there and then negligently and carelessly caused and allowed to be dropped from the tank aforesaid without giving any notice or warning to (the deceased), a certain section of steel or iron pipe," which struck (the deceased) on the left side of the head "inflicting upon him a severe and painful wound, causing him great physical suffering, distress and mental anguish," etc., and from the effects of which wound and injuries the deceased thereafter on a certain day died.

The second count is substantially the same as the first and third counts, except that it, in substance, specifically alleges the duty of the defendant, through its foreman under whom the deceased was working, to warn the deceased "of the danger of being struck or injured by the falling of said tools, implements or sections of pipe, which said danger was known to said foreman but was unknown to" (the deceased); and alleges also the breach of that duty by such foreman.

The fourth count is as follows:

"Fourth Count.—And for this, also, to-wit: That heretofore, to-wit, and after the plaintiff's intestate had been struck and injured, at the time and place and in the manner set out in the foregoing counts, the said plaintiff's intestate was removed by the defendant to a hospital owned and operated by it, for the benefit of its sick and injured employees, and the said defendant then and there undertook to cure plaintiff's intestate of his hurts aforesaid;

"And thereupon, it became and was the duty of the said defendant to use due and reasonable care to nurse and care for the said plaintiff's intestate, and not to discharge him therefrom until and unless he was in a proper condition to leave the same;

"But nevertheless, not regarding its duty in the premises, the said defendant, thereafter, to-wit, on the 9th day of December, 1915, about twenty-four hours after the injury to the said plaintiff's intestate as aforesaid, well knowing that the plaintiff's intestate was not in condition to leave the said hospital, then and there negligently and carelessly dismissed and discharged and *forceably* ejected the said plaintiff's intestate from its hospital, and that as a result of the said negligent and careless act of the defendant in dismissing and discharging and *forceably* ejecting the plaintiff's intestate from its hospital at the time and place and in the manner and under the condition aforesaid, the plaintiff's intestate thereafter, to-wit, on the ———— day of December, 1915, died.

"Wherefore, the plaintiff says that damages have been sustained to the amount of ten thousand ($10,000.00) dollars and that by virtue of the statute in such cases made and provided, he hath a right to recover said amount, and, therefore, he institutes this action of trespass on the case."

The Virginia employer's liability act under which this action was instituted as the amended declaration stood before the allegations in regard to the character of the defendant corporation were stricken out as aforesaid, is contained in Acts 1912, p. 583, and, so far as material, is as follows:

"Chap. 291.—An act to amend and re-enact an act entitled an act imposing upon railroad corporations liability for injury to their employees in certain cases, approved March 27, 1902.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"§1294-k. That every corporation operating a railroad in this State, whether such corporation be created under the laws of this State or otherwise, shall be liable in damages for any and all injury sustained by any employee of such corporation, as follows:

"When such injury results from the wrongful act,· neglect or default of an agent or officer of such corporation superior to the employee injured, or of a person employed by such corporation having the right to control or direct the services of such employee injured, or the services of the employee by whom he is injured; and also when such injury results from the wrongful act, neglect or default of ·a co-employee engaged in another department of labor from that ·of the employee injured, or a co-employee (*notwithstanding the fact that thé party injured had the right to ·direct the services of the co-employee*) *in the performance of any duty on or about· the same or* another train of cars, *or on or about an engine* or of a co-employee who has charge ·of any switch, signal point or locomotive engine, or who is charged with dispatching trains or transmitting telegraphic ·or telephonic orders. Knowledge by· any employee injured of the defective or unsafe character or condition of any machinery, ways, appliances or structures of such corporation shall not of itself ˈbe a bar to recovery for any injury ·or death caused thereby * * * " (Italics supplied).

The italicised portions of the statute constitute the ·amendments to the original act.

The title of the original act was as follows:

"An act imposing upon railroad corporations liability for injury to their employees in certain cases."

The original is contained in Acts 1901-2, p. 335, was approved March 27, 1902, before the Constitution of the State of 1902 was adopted, and, so far as the instant case is affected, contains· precisely the same provisions as are contained in the statute as it stood at the time the action in the instant case was instituted.

The Constitution of 1902, so far as material in the instant case, contains the following provisions:

"Sec. 162.    Fellow-servant. doctrine abolished to extent stated.

"The doctrine of fellow servant, so far as it affects the liability of the master for injuries to his servant resulting from the acts or omissions of any other servant or servants of the common master, is, to the extent hereinafter stated, abolished as to every employee of a railroad company, engaged in the physical construction, repair or maintenance of its roadway, track or any of the structures connected therewith, or in any work in or upon a car or engine standing upon a track, or in the physical operation of a train, car, engine, or switch, or in any service requiring his presence upon a train, car, or engine; and every such employee shall have the same right to recover for every injury suffered by him from the acts or omissions of any other employee or employees of the common master that a servant would have (at the time when this Constitution goes into effect), if such acts or omissions were those of the master himself in the performance of a non-assignable duty, provided, that the injury, so suffered by such railroad employee, result from the negligence of an officer, or agent, of the company of a higher grade of service than himself, or from that of a person, employed by the company, having the right, or charged with the duty, to control or direct the general services or the immediate work of the party injured, or the general services or the immediate work of the co-employee through, or by, whose act or omission he is injured; or that it result from the negligence of a co-employee engaged in another department of labor, or engaged upon, or in charge of, any car upon which, or upon the train of which it is a part, the injured employee is not at the time of receiving the injury, or who is in charge of any switch, signal point, or locomotive engine, or is charged with dispatching trains or transmitting telegraphic or telephonic orders therefor; and whether such negligence be in the performance of an assignable or non-assignable duty. The

physical construction, repair or maintenance of the road-way, track or any of the structures connected therewith, and the physical construction, repair, maintenance, cleaning or operation of trains, cars or engines, shall be regarded as different departments of labor within the meaning of this section. Knowledge, by any such railroad employee injured, of the defective or unsafe character or condition of any machinery, ways, appliances or structures, shall be no defense to an action for injury caused thereby. * * * Nothing contained in this section shall restrict the power of the General Assembly to further enlarge, for the above named class of employees, the rights and remedies herein-before provided for, or to extend such rights and remedies to, or otherwise enlarge the present rights and remedies of, any other class of employees of railroads or of employees of any person, firm or corporation."

The following are some of the provisions of the general statute law of the State in existence at the time said Virginia employer's liability statute was amended and re-enacted in 1912, namely: .

"*Railroad, transportation, etc., corporations; how formed.* —Any number of persons, not less than seven, may form a corporation under the provisions of this act, for the purpose of purchasing, * * * leasing or constructing, and of maintaining and *operating a railroad* or railroads, to be operated with any kind of motive power, *and to be used as a common carrier* in the conveyance of persons or property, or both; * * * * " (Italics supplied.) Acts 1902-3-4, chap. 2, sec. 1, p. 437, Code 1919, sec. 3856.

"Whenever any corporation chartered or existing by, un-der or in pursuance of the laws of any State or country other than the State of Virginia shall assume *the operation and* control *of any railroad in this State* as purchaser, les-see * * * or otherwise, such corporation shall, before

assuming the operation, management or control of any such railroad, be chartered under the laws of this State, and shall as such be subject to the jurisdiction of the courts of this State, and *in all respects be governed and, so far as located in this State, shall be controlled by the laws of this* State." (Italics supplied.)   Acts 1902-3-4, chap. 4, sec. 21, p. 986, Code 1919, sec. 3955.

In the same chapter of the Acts of Assembly, now contained in the same chapter of the Code of 1919, both just cited, appears the following among other general provisions of law, namely:

"So soon as any portion of *a railroad* may be ready for transportation, *the railroad company* may * * * transport persons and property on the same, for which purpose there shall be kept in good order such locomotives, cars and other things as may be proper. * * *" (Italics supplied.) *Idem,* Acts, sec. 2, Code, sec. 3937.

*"Every railroad company doing business in this State* shall establish and maintain along its line, at depots and stations not more than ten miles apart, telegraphic or telephone offices to be operated by competent persons in the employ of such company," etc., etc. (Italics supplied.) *Idem,* Acts, sec. 11, Code, sec. 3945.

*"Any railroad company* heretofore or that may hereafter be *incorporated and authorized to construct a railroad within* the jurisdiction of *this State,* shall, when such railroad is constructed *to any other railroad track* or right of way of *any other railroad being operated under the laws of this State,* have the right to connect with *such railroad* in any county of this State," etc., etc. (Italics supplied.) *Idem,* Acts, sec. 37, Code, sec. 3971.

"Whenever any horses, cattle or other stock may be killed or injured, or other property damaged, by the cars or locomotives *upon any railroad,* it shall be lawful for the owner thereof or for the railroad company to have the prop-

erty examined and the damages assessed," etc., etc.    (Italics supplied.)    *Idem, Acts,* sec. 57, Code, sec. 3994.

"If *the railroad company* shall fail, for sixty days after such report is so returned to said clerk, to pay to the owner," etc., etc.    (Italics supplied.)    *Idem, Acts,* sec. 58, Code, sec. 3995.

"Whenever, in the opinion of the council of any city or incorporated town, the public interest requires that a gate be erected and maintained or a flagman stationed and kept at the place where the highway or street is crossed, within the corporate limits of such town or city, *by any railroad* heretofore or hereafter constructed * * * the corporation shall * * * erect and maintain at such crossing the style of gate directed * * * and keep a man in charge of same," etc.    (Italics supplied.)    *Idem, Acts,* sec. 61, Code, sec. 3998.

As appears from the notes of the Revisors to Code, 1919, section 5791, the provisions of the Virginia employer's liability act, under which the action in the instant case was instituted as aforesaid, are codified in sections 5791 to 5796 inclusive, and Acts 1912, p. 583, aforesaid, "has been omitted (from the Code) and thereby repealed." And it clearly appears from such notes that the provision of the present employer's liability act as contained in such sections of the Code of 1919 are not intended to change the policy of the State on the subject or to have any different meaning touching the corporations which are affected by such act. As contained in such sections of the Code of 1919, the act is expressly limited in its application to "every *common carrier* by railroad engaged in intrastate commerce." (Italics supplied.)    Code, 1919, sec. 5791.    And to section 5796 is added the provision that, "The five preceding sections shall not apply to electric railways operated wholly within this State," making statutory what was already the construction of this court in *Norfolk, etc., Traction Co.* v. *Ell-*

*ington,* 108 Va. 245, 61 S. E. 779, 17 L. R. A. (N. S.) 117, of the meaning of the words "railroad company" contained in the provisions of section 162 of the Constitution above copied, and applying the same meaning to the words "common carrier."

*D. H. & Walter Leake, Scott & Buchanan, and Penn & Noble,* for the plaintiff in error.

*Plummer & Bohannan,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions presented for our decision by the assignments of error in this case will be disposed of in their order as stated below.

[1]   1. Did the Virginia employer's liability act as contained in Acts 1912, p. 583, above copied, apply to the class of employees therein specified of a manufacturing corporation operating in the State a private railroad, merely as incidental to and in connection with its manufacturing plant and manufacturing business; or only to such employees of corporations operating in this State railroads used or authorized by law to be used as common carriers engaged in intrastate commerce?

We are of opinion that the first part of the question must be answered in the negative and the latter in the affirmative.

[2, 3]   The decision of the question depends upon the legislative meaning with which the words "every corporation operating a railroad in this State" were used in the statute in question.   It is, of course, apparent that a literal meaning might be attributetd to such words which would embrace every corporation operating "every kind of road

or way on which rails of iron are laid for the wheels of cars to run upon," to use the language of one of the decisions on the subject, without regard to the character of the railroad as fixed by the business in which it is engaged. It is undoubtedly within the constitutional authority of the legislature in enactments such as this, which are in exercise of the police power of the State, to adopt such or even a yet broader classification, as is expressly recognized in the closing sentence of section 162 of the Virginia Constitution of 1902.   There it is expressly provided that nothing contained in that section should restrict the power of the General Assembly to further enlarge the rights and remedies of the class of employees *of railroads* given the benefits of the provision of that section of the Constitution, or to extend such rights and remedies to other employees *of railroads,* "or employees of *any person, firm or corporation."* (Italics supplied.)    And, as the employer's liability acts of this and of other States and the State and Supreme Court decisions thereon plainly show, the law on the subject has undergone and, perhaps, is still undergoing a process of development.    This is very apparent from a reading of the Supreme Court decisions presently to be cited.   It was at one time very generally thought that such legislation would be obnoxious to the equal protection clause of the Fourteenth Amendment of the Federal Constitution unless based on a classification of employees injured while engaged in an extra hazardous employment, such as the use and operation of railroads; that a classification in such legislation which embraced office or shop or other employees of railroad companies, removed from the dangers of train service, would deny to other workmen engaged in business of like or equal hazard the equal protection guaranteed by said Federal constitutional provision—would destroy the equality within the class which such provision requires—and hence would be invalid.    But recent decisions of the Supreme Court have

held to the contrary. *L. & N. R. Co.* v. *Melton,* 218 U. S.
36, 30 Sup. Ct. 676, 54 L. Ed. 921, 47 L. R. A. (N. S.) 84,
and note; *Aluminum Co.* v. *Ramsey,* 222 U. S. 251, 32 Sup.
Ct. 76, 56 L. Ed. 185; *Easterling Lumber Co.* v. *Pierce,* 235
U. S. 380, 35 Sup. Ct. 133, 59 L. Ed. 279. See also *Missouri
Pac. R. Co.* v. *Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L.
Ed. 107; *Tullis* v. *Lake Erie, etc. R. Co.,* 175 U. S. 348, 20
Sup. Ct. 136, 44 L. Ed. 192; *Minnesota Iron Co.* v. *Kline,* 199
U. S. 593, 26 Sup. Ct. 159, 50 L. Ed. 322; *El Paso, etc., R.
Co.* v. *Gutierrez,* 215 U. S. 87, 30 Sup. Ct. 21, 54 L. Ed. 106,
referred to in the more recent Supreme Court cases just
cited. It is now settled beyond controversy, by the Supreme
Court decisions above cited, that a classification in a State
employer's liability act of objects, based on a distinction
between employers engaged in a particular business within
the State (certainly where the business is that of oper-
ating a railroad, even where the railroad is not used in the
business of a common carrier)—as, for example, between
employees of corporations engaged in such business and
employees of partnerships or private persons engaged in
the same or a similar business—is within the legitimate
exercise of legislative discretion in classification of the ob-
jects of such legislation and is valid in the purview of the
equal protection clause aforesaid of the Federal Constitu-
tion. See especially *Aluminum Co.* v. *Ramsey,* 222 U. S.
251, 32 Sup. Ct. 76, 56 L. Ed. 185, at p. 189. But this does
not solve the question of whether or not the word "rail-
road" is employed in a particular State statute with the
meaning of a railroad used in the business of a common
carrier.

[4] The State and Federal decisions construing the
various employer's liability acts of the different States,
and also the Federal employer's liability act of 1906 (34
Stat. 232) and that of 1908 (U. S. Comp. St. §§ 8657-8665)
in its application to intrastate commerce within the Dis-

trict of Columbia, are very numerous. Many of them have
been cited in argument before us. We have examined all
of those cited, and others on the same subject not cited, and
such examination has been very helpful in enabling us to
reach the conclusion above expressed. We find this to be
the doctrine of such decisions: Whatever may be the spe-
cific words used in this character of, or in kindred, legis-
lation to classify the objects of the statute, the legislative
meaning of the words must be found by considering them
in the light of other legislation in the particular State on
the same subject and of the meaning which is given to the
same words in other existing general legislation of such
State. *Mass. Loan & Trust Co.* v. *Hamilton* (1898), 88
Fed. 589, 32 C. C. A. 46, and *Williams* v. *Northern Lumber
Co.* (C. C. 1901), 113 Fed. 382, both involving Montana
statutes; *White* v. *Kennon* (1889), 83 Ga. 343, 9 S. E. 1082;
*Ellington* v. *Beaver Dam Lumber Co.* (1893), 93 Ga. 53,
19 S. E. 21; *Self* v. *Adel Lumber Co.* (1909), 5 Ga. App. 846,
64 S. E. 112, involving Georgia statutes; *McKivergan* v.
*Alexander, etc., Lumber Co.* (1905), 124 Wis. 60, 102 N.
W. 332, involving a Wisconsin statute; *Palangie* v. *Wild
River Lumber Co.* (1894), 86 Me. 315, 29 Atl. 1087, involv-
ing a Maine statute; *Stearns, etc., Lumber Co.* v. *Fowler*
(1909), 58 Fla. 362, 50 So. 680, involving a Florida stat-
ute; *Matrusciallo* v. *Milliken Bros.* (1910), 141 App. Div.
769, 126 N. Y. Supp. 739, involving a New York statute;
*Schoen* v. *Chicago* (1910), 112 Minn. 38, 127 N. W. 433,
45 L. R. A. (N. S.) 841, involving a Minnesota statute;
*Cunningham* v. *Neal* (1908), 101 Tex. 338; 107 S. W. 539,
15 L. R. A. (N. S.) 479; *Mounce* v. *Lodwick Lumber Co.*
(Tex. Civ. App. 1906), 91 S. W. 240; *Kirby Lumber Co.* v.
*Owens* (1909), 56 Tex. Civ. App. 370, 120 S. W. 936; and
*St. Louis, etc., R. Co.* v. *Jenkins* (Tex. Civ. App. 1911),
137 S. W. 711, involving Texas statutes. See also 5 La-
batt on Master and Servant, sec. 1726, 1749-1802; *Norfolk,*

*etc., Traction Co.* v. *Ellington,* 108 Va. 245, 51 S. E. 779, 17 L. R. A. (N. S.) 117.

In practically every State which has legislated on this subject it is found, as above indicated, that the scope of such legislation has been enlarged from time to time. In some States this development has proceeded further than in others. In some the classification of the objects of the statute embraces employees, not only of common carriers, but also of private corporations, partnerships and individuals engaged in private business of various kinds.

[5] Upon a consideration of the legislation in Virginia which is referred to in the statement preceding this opinion, we are satisfied that the statute involved in the instant case has not gone beyond embracing in its classification the employees of common carrier employers, where such employers are either acting as such, or are empowered by law to so act, in the operation of railroads in this State. See, as bearing on this subject, *Wilson* v. *Virginia Portland Ry. Co.,* 122 Va. 160, 94 S. E. 347, and what is said in *U. S. Spruce Lumber Co.* v. *Shumate,* 118 Va. at p. 474, 87 S. E. 723. This classification doubtless also includes employees of trustees, receivers and other persons who operate railroads in this State under franchises of common carriers. That is to say, the classification of the Virginia statute under consideration of the employees to whom its provisions are applicable, embraces only railroad common carrier servants. And we are satisfied that the statute aforesaid does not go beyond this, so as to embrace the employees of private manufacturing corporations, whether foreign or domestic, engaged in the business of manufacturing in this State, or other private corporations engaged in other private business, any more than it does the employees of individuals or partnerships engaged in private business, although they may, in connection therewith and as incidental thereto, operate private railroads.

The defendant cites and especially relies upon the decisions above mentioned construing the Minnesota and Texas employer's liability acts therein involved.

With regard to the Minnesota employer's liability act and the holding of the Minnesota Supreme Court that "it applies to a private company making use of locomotives and cars, the employees of which are subject to the same danger as employees of railroads engaged as common carriers," the following is said in 5 Labatt on Master and Servant, sec. 1782: "* * * Under the State decisions the act is based upon a distinction in the nature of the employment and not of the employers, * * *." As we have seen the contrary is true of the Virginia statute under consideration. The latter, as aforesaid, confines its classification of the beneficiaries thereof to certain servants of the employers therein mentioned.

Similarly, as it appears from the Texas decisions, above mentioned, which are relied on by defendant, the holding of those cases (to the effect that the Texas employer's liability acts there involved are applicable to private operations of railroads in which the employees are subjected to the same dangers as employees of railroads engaged as common carriers) is based upon the same distinction as that of the Minnesota courts holding aforesaid. As said in *Cunningham* v. *Neal,* 101 Tex. 338; 107 S. W. 539, 15 L. R. A. (N. S.) 479: "The facts show that there was no difference in the character of this road, nor in the manner of its construction, equipment or operation, from that of the connecting roads, except to the extent of the business done upon it and that it was operated by a private corporation. * * * We see nothing indicating that the statute was enacted in the interest of the public or to secure better public service. * * * * There being nothing in the law nor in the concurrent legislation to indicate such intention in its enactment, why should the law be limited to common carriers? The

legislature of Texas has by successive acts broken away from the old rule of exemption of the master for the negligence of fellow-servants in order to meet new phases of service, and, in this line, the article of the statute in question was enacted to meet and provide for the extra hazards attending the operation of machinery upon railroad tracks and to give better protection to those who were in such service by making the master or persons operating the road liable for the negligence of the persons employed in the handling and management of its machinery * * * *. The same dangers attended the operation of the machinery upon the private road of Cunningham & Co., as would have attended the operation of the same machinery upon the track of a common carrier. Therefore the injury here complained of is embraced within the letter and spirit of the statute * * *." This reasoning is wholly inapplicable to the Virginia statute under consideration which by its express terms embraces any and all employees therein specified regardless of whether they are engaged in the train service.

[6] 2. Are the first and third counts of the amended declaration good independently of the allegations which were intended to bring the case within the operation of the Virginia employer's liability act, aforesaid, which were stricken out as aforesaid?

This question must be answered in the negative.

These counts allege an injury due to changing conditions at the place of work of the servant occurring in the progress of the work of other servants of the master in a different department of the service from that of the injured servant, where the circumstances alleged in the declaration are not such that any negligent act or omission of the master appears to have existed in the matter of foreseeing and guarding against the natural and probable result of reasonably to be expected acts of the fellow servants in carrying out the operations of the master.

22

There is no allegation in the declaration of defect in the design or plan of the construction in or about the place of work of the plaintiff as contributing to the fall of the section of steel or iron pipe which injured the plaintiff, or that the circumstances were such that the defendant ought reasonably to have foreseen or anticipated that such an occurrence was likely to happen so as to unreasonably endanger the place of work of the plaintiff because of any defective design or plan of the operations of the defendant. See *Hamlet* v. *Dupont de Nemours & Co.*, (*ante*, p. 130, 105 S. E. 529) decided at this term of court.

The case falls within the class of cases ruled by *N. & W. Ry. Co.* v. *Nuckols*, 91 Va. 201, 21 S. E. 342, and *Hambley's Case,* 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009, and the injured servant must be held to have assumed the risk of injury due to the negligence of the fellow servants which caused the injury. Hence we are of opinion that the counts of the declaration in question do not state a case in which the plaintiff is entitled to recover independently of the statute.

[7] It is urged in argument in behalf of the plaintiff that the holding of this court, in the recent case of *Clinchfield Coal Corporation* v. *Ray*, 121 Va. 318, 93 S. E. 601, in the classification of the *Ray Case* as falling within the doctrine of the *Norment Case*, 84 Va. 167, 4 S. E. 211, 10 Am. St. Rep. 827, reinstates as the law of this State some expressions in the opinion in the *Norment Case*, to the effect that the mere fact that the servant is employed in a different department of service renders inapplicable the common law doctrine of the assumption of risks of the result of the negligence of fellow servants, which was disapproved in the *Nuckols Case*. This is incorrect. The *Ray Case* expressly cites the *Nuckols Case*, and *Hambly's Case* (154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009), on which the holding of the *Nuckols Case* upon the subject under consideration is based,

and recognizes the doctrine of the *Nuckols Case* as the law of this State.  The *Ray Case* held merely that "the principle on which rests the (*Normant Case*) is" the law of this State and that was precisely the holding of the *Nuckols Case* with respect to the *Normant Case.* As said of the *Normant Case* in the *Nuckols Case,* at p. 202 of 91 Va., at p. 345 of 21 S. E., "The decision in this case was perfectly correct, but there are expressions in the opinion which we do not consider to have been at all necessary to the conclusion reached by the court * * * * ."

The doctrine of the *Nuckols Case* is that,

"1. A person entering the service of another assumes all risks naturally incident to the employment, including the danger of injury by the fault of negligence of a fellow servant." (Italics supplied.)

"2. The liability does not depend upon the fact that the servant injured may be in a different department of service from the wrongdoer.  The test is, were the departments so far separated from each other as to exclude the probability of contact and of danger from the negligent performance of their duties by employees of the different departments?  If they are so separated, then the servant is not to be deemed to have contracted with reference to the negligent performance of the duties of his fellow servant in such other department.

"3. The liability does not depend upon gradations in employment, unless the superiority of the person causing the injury was such as to put him in the category of principal or vice-principal."

[8] But this concerns merely the question of when the servant is to be considered as having assumed the risk of the negligence of a co-employe.  Where, however, the departments are so separated that, from the standpoint of the servant, the probability of contact and of danger from the negligent performance of their duties by the employees of

the different departments is excluded, if the master per-- forms his non-assignable duty of exercising reasonable care to provide a reasonably safe place of work for the servant, and the circumstances are such that the servant assumes and may reasonably assume, that the master has performed or will perform such duty (which would be the situation "naturally" or normally), so that the servant is not to be taken to have assumed the risk of the negligence of his co- employees, the master is liable in case of his breach of his non-assignable duty just mentioned, although the injury of the servant is due to changing conditions at the place and occurring in the progress of the work. The holding in the *Ray Case* is based upon this view of the law as appears from the opinion.

That is to say, the liability of the master in such case, if it exists, is in truth based upon his breach of such non- assignable duty. The *Normant* and *Ray Cases,* and other like cases, exemplify a situation in which both of the fea- tures just mentioned are present, namely, the separation of the respective departments of work to the extent and with the result stated upon the application of the doctrine of the assumption of risks, and the failure of the master in his operations to properly perform his non-assignable duty aforesaid. The situation of the servant in such case being one which has kept from his view the operation of the master in the separate department of work, and hence, the danger not being open and obvious to him, the servant has the right to and may reasonably assume that the master has performed or will perform such duty—the fact being also that the servant has not by other means acquired either actual or constructive knowledge to the contrary.

The first and third counts under consideration do not al- lege a situation of fact from which either of the features aforesaid are made to appear.

3. Is the second count of the declaration good independently of the Virginia statute aforesaid?

[9] This count alleges an injury caused by the failure of the master to discharge the alleged duty to warn as arising from changing conditions at the place of work due to the same causes as are alleged in the first and third counts. What is said above in connection with the consideration of the second and third counts of the declaration disposes of this question adversely to the plaintiff.  The duty to warn in such cases does not arise except as an incident to and growing out of the duty of the master with respect to providing a reasonably safe place of work.  We have here presented the converse of the *Ray Case*, and for the reasons above stated in connection with the references to that case, no duty to warn was imposed upon the master in the instant case.  The second count of the declaration is, therefore, bad on demurrer.

The sole question remaining for our consideration is the following:

[10]  4. Is the fourth count of the declaration good?

This question must be answered in the affirmative.

It may or may not be true, as urged by the defendant, that in this case the whole cost of the medical attendance was defrayed by the defendant, and that the dismissal and forceable ejection of the deceased from the hospital under the circumstances and with the result alleged was the act of those in charge of the hospital, about whose selection and retention the defendant had exercised due care, so that it may develop on the trial of the case that his facts are such that under the doctrine of *Va. Iron, etc., Co.* v. *Odle,* 128 Va. 280, 105 S. E. 107; *Big Stone Gap Iron Co.* v. *Ketron,* 102 Va. 23, 45 S. E. 740, 102 Am. St. Rep. 839; *Va. Ry. & Power Co.* v. *Davidson,* 119 Va. 323, 89 S. E. 229; 5 Labatt on Master and Servant, p. 6214; the authorities referred to in notes in 28 L. R. A. 546 *et seq.,* 4 L. R. A.

(N. S.) 49 *et seq.,* 17 L. R. A. (N. S.) 1167, 40
L. R. A. (N. S.) 486, 30 L. R. A. (N. S.) 1207,
48 L. R. A. 531; *Union Pac. R. Co.* v. *Artist,* 60 'Fed. 365,
9 C. C. A. 14, 23 L. R. A. 581; *Taylor's Adm'r* v. *Protestant
Hospital Asso.,* 85 Ohio St. 90, 96 N. E. 1089, 39 L. R. A.
(N. S.) 427, 1 N. C. C. A. 438; and *Gable* v. *Sisters of St.
Francis,* 227 Pa. 254, 75 Atl. 1087, 136 Am. St. Rep. 879,
2 N. C. C. A. 381, there may be no liability on the defend-
ant in the premises. But these matters, under the allega-
tions of the declaration under consideration, are matters of
defense. The allegations of ultimate fact contained in the
fourth count of the declaration are to the effect that the de-
fendant undertook the task alleged, in which case, even
though it was a voluntary undertaking, the law, as has been
long well settled, imposed upon the defendant the duty to
use some degree of care in the discharge of the undertaking.
And the breach of that duty is alleged in terms, which if
true, constituted conduct of the defendant itself, which was
inhumane in the extreme for the results of which the de-
fendant was, in such case, unquestionably liable. *Hunicke*
v. *Meramec Co.,* 262 Mo. 560, 172 S. W. 43, L. R. A. 1915
C. 789, Ann. Cas. 1915 D. 493. See also 6 Va. Law Reg. (N.
S.) pp. 323-4.

Therefore, because of the error of the court below in sus-
taining the demurrer to the fourth count of the declaration
the case will be reversed, with leave, however, to the plain-
tiff, if so advised and the facts should warrant such action,
to amend the other counts of the declaration in accordance
with the views expressed in this opinion.

*Reversed and remanded.*